IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** _____ |
| v. | **VIOLATIONS:** |
| **SUZGO PHIRI,** | 18 U.S.C. § 1349 (Conspiracy); |
| | 18 U.S.C. § 1343 (Wire Fraud); |
| (a/k/a "Malcolm Tucker," "David Campbell," "Eric Brooks," "Aaron Brooks," "John Sanders," "Jamaal Brooks," "Brady Jones," and "Payton Deel"), | 18 U.S.C. § 1344 (Bank Fraud); |
| | 18 U.S.C. § 1956(a)(1)(B)(i)(Laundering of Monetary Instruments); |
| | 18 U.S.C. § 1028A (Aggravated Identity Theft); and |
| | 18 U.S.C. § 2 (Aiding and Abetting, Causing an Act to be Done) |
| Defendant. | **FORFEITURE ALLEGATION:** |
| | 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1); 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury for the District of Columbia charges:

### Background

At all times material herein:

1.    Defendant SUZGO PHIRI was a resident of the State of Maryland and the District of Columbia. PHIRI also used numerous aliases and false identifications in his interactions with law enforcement, government agencies, financial institutions, and commercial service providers. Some of those aliases and false identifications were "Malcolm Tucker," "David Campbell," "Eric Brooks," "Aaron Brooks," "John Sanders," "Jaamal Brooks," "Brady Jones," and "Payton Deel."

2.    The American Express Company ("AmEx") was a multinational company that offered payment card services to its customers. AmEx was a financial institution with deposits

insured by the Federal Deposit Insurance Company ("FDIC"). Among other services to consumers, AmEx offered prepaid debit cards and gift cards ("Prepaid Cards") which could be purchased at retail and store locations across the United States in various denominations. AmEx Prepaid Cards could be used to make purchases at virtually any location where AmEx credit cards are accepted so long as there was a remaining balance on the Prepaid Card.

3. Wells Fargo Bank N.A. ("Wells Fargo") and TD Bank N.W. ("TD Bank") were financial institutions with deposits insured by the FDIC.

4. Block, Inc., formerly known as Square, Inc. ("Square"), was a financial services and digital payments company. Square offered credit and debit card processing services to retailers. Square sold point-of-sale card readers to merchants and retailers who used Square's services. When a retailer used Square to process a card transaction, Square would deposit funds into the retailer's account with Square. Square allowed a retailer to include a tip or gratuity in addition to the base transaction amount. For a fee charged to the retailer, Square would instantly credit the funds from the card transaction including the tip or gratuity to the retailer's account. A retailer's Square account could be linked to a retailer's bank account with a financial institution. Once funds were deposited into the retailer's Square account, a retailer could move those funds into the retailer's linked bank account.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud and Bank Fraud)

5. Paragraphs 1 through 4 are realleged.

6. Beginning in or about May 2018 and continuing until the present, in the District of Columbia and elsewhere, defendant SUZGO PHIRI did unlawfully knowingly conspire, combine, confederate, and agree with Conspirator A and other conspirators to commit offenses against the United States, that is:

a. 18 U.S.C. § 1343, Wire Fraud, by having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice; and

b. 18 U.S.C. § 1344(2), Bank Fraud, by executing and attempting to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of a federally insured financial institution, by means of false and fraudulent pretenses, representations, and promises.

### Purpose of the Conspiracy

7. It was a purpose of the conspiracy for PHIRI and his conspirators to make money by using Prepaid Cards to make thousands of Square Account sham transactions—*i.e.*, with no goods or services exchanged—which included "tip" amounts far greater than the value of the Prepaid Cards, all to gain those "tip" funds into bank accounts controlled by the conspirators, knowing the financial institutions associated with those unfunded "tip" payments would suffer the loss.

### Manner and Means

8. Among the manner and means by which PHIRI and his conspirators would and did carry out the objectives of the conspiracy were the following:

a. PHIRI and his conspirators obtained the personal identifying information ("PII") for numerous individuals without their consent.

b. PHIRI and his conspirators opened numerous accounts at financial institutions, including Wells Fargo and TD Bank using their own names and using the PII of others as their aliases (the "Alias Accounts"), for example "Brady Jones";

3

c. PHIRI and his conspirators set up numerous accounts with Square using their own names and using the PII of others as their aliases (the "Square Accounts"), for example "Aaron Brooks," "Eric Brooks," "David Campbell," "Brady Jones," "John Sanders," "Payton Deel," and "Malcolm Tucker";

d. Some of the Square Accounts that PHIRI and his conspirators set up were created by using the actual PII belonging to people who had not given permission for the creation of the Square Accounts;

e. PHIRI and his conspirators then purchased numerous AmEx Prepaid Cards from merchants located in the District of Columbia and elsewhere;

f. PHIRI and his conspirators then made numerous sham transactions in a nominal amount—often only one dollar—with the Prepaid Cards to which they would add a disproportionately large tip amount—for example, five dollars—which Square would instantly credit in full to the Square Accounts.

g. PHIRI and his conspirators transferred funds from the Square Accounts into the Alias Accounts before the fraud could be detected by Square and any financial institutions.

h. PHIRI and his conspirators then removed the fraudulently obtained funds from the Alias Accounts through ATM withdrawals, point-of-sale transactions, and other transfers in the District of Columbia and elsewhere causing losses of at least $200,000.

**(Conspiracy to Commit Wire Fraud and Bank Fraud
in violation of 18 U.S.C. § 1349)**

## COUNTS TWO THROUGH SEVEN
**(Aggravated Identity Theft)**

9. Paragraphs 1 through 4, and 6 through 8 are realleged.

4

10. On or about the following dates within the District of Columbia and elsewhere, defendant SUZGO PHIRI did knowingly transfer, possess, and use, without lawful authority, the following means of identification of another person, during and in relation to Count One of this Indictment, specifically by using the means of identification to create a Square Account:

| COUNT | ACCOUNT CREATION DATE | ACCOUNT REFERENCE NUMBER | VICTIM | MEANS OF IDENTIFICATION |
|---|---|---|---|---|
| TWO | June 11, 2018 | 6MY9[redacted] | M.T. | Social Security Number |
| THREE | October 6, 2018 | DPHN[redacted] | K.R. | Social Security Number |
| FOUR | October 5, 2018 | 3VT4[redacted] | C.B. | Social Security Number |
| FIVE | January 4, 2019 | 12K4[redacted] | B.J. | Social Security Number |
| SIX | October 27, 2018 | QB8Z[redacted] | D.E.C. | Social Security Number |
| SEVEN | June 11, 2018 | 85G6[redacted] | P.D. | Social Security Number |

**(Aggravated Identity Theft, and Aiding and Abetting and Causing an Act to be Done in violation of 18 U.S.C. §§ 1028A and 2)**

## COUNT EIGHT
**(Laundering of Monetary Instruments)**

11. Paragraphs 1 through 4 and 6 through 8 are realleged.

12. On or about the dates below, within the District of Columbia, the defendant SUZGO PHIRI did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is Wire Fraud and Bank Fraud in violation of 18 U.S.C. §§ 1343 and 1344(2), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while

conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| DATE | TRANSACTION | AMMOUNT |
|---|---|---|
| 11/2/2018 | ATM Withdrawal | $300.00 |
| 11/2/2018 | Check Card Purchase | $302.49 |
| 11/3/2018 | Check Card Purchase | $247.39 |
| 11/3/2018 | Check Card Purchase | $302.49 |
| 11/3/2018 | Check Card Purchase | $302.49 |
| 11/3/2018 | Check Card Purchase | $128.22 |
| 11/3/2018 | ATM Withdrawal | $310.00 |
| 11/5/2018 | Check Card Purchase | $306.99 |
| 11/5/2018 | Check Card Purchase | $304.13 |
| 11/6/2018 | ATM Withdrawal | $300.00 |
| 11/8/2018 | Check Card Purchase | $43.29 |
| 11/6/2018 | Check Card Purchase | $17.64 |
| 11/6/2018 | Check Card Purchase | $106.85 |
| 11/13/2018 | Check Card Purchase | $41.56 |
| 11/13/2018 | Check Card Purchase | $302.99 |
| 11/13/2018 | Check Card Purchase | $302.99 |
| 11/14/2018 | Check Card Purchase | $100.00 |
| 11/14/2018 | ATM Withdrawal | $303.00 |
| 11/15/2018 | Check Card Purchase | $147.34 |
| 11/21/2018 | Check Card Purchase | $4.95 |
| 11/23/2018 | ATM Withdrawal | $300.00 |

| DATE | TRANSACTION | AMMOUNT |
|---|---|---|
| 11/23/2018 | Check Card Purchase | $300.00 |
| 11/26/2018 | Check Card Purchase | $11.06 |

**(Laundering of Monetary Instruments, Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)**

## COUNT NINE
### (Wire Fraud as "Malcolm Tucker")

13. Paragraph 1 is realleged.

14. Company A was a rental property management company that provided services to an apartment building located at 707 Roeder Road, Silver Spring, Maryland.

15. Company B was a rental property management company that provided services to an apartment building located at 28 K Street, SE, Washington, D.C.

16. Company C was a company that provided furniture rental services to customers in Washington, D.C.

17. Company D was a nationwide rental car service provider with an office in the State of Maryland.

### The Scheme to Defraud

18. Between on or about April 2018 until in or about February 2019, in the District of Columbia and elsewhere, the defendant SUZGO PHIRI devised and intended to devise a scheme to defraud and to obtain money and property from Company A, Company B, Company C and Company D by means of materially false and fraudulent pretenses, representations, and promises as more fully described below.

19. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company A and Company B in the form of rental housing without paying money that was due to those companies.

20. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company C in the form of rental home furnishings without paying money that was due to Company C.

21. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company D in the form of a rental car without paying money that was due to Company D.

### Manner and Means

22. It was a part of the scheme to defraud that defendant PHIRI obtained identification documents with the name "Malcolm Tucker," the defendant's s own photograph, a fictitious date of birth, and the Social Security Number of M.T. who was a child born in 2014. PHIRI also prepared and obtained false tax and employment records in the name of "Malcolm Tucker."

23. It was further a part of the scheme that PHIRI, using the alias "Malcolm Tucker," applied to Company A and to Company B for an apartment rental with the name of "Malcolm Tucker." PHIRI's applications to Company A and Company B provided false information about "Malcom Tucker," and fraudulent identity documents, and fraudulent employment records in support of those applications.

24. It was further a part of the scheme that PHIRI, using the alias "Malcom Tucker," entered into a contract with Company C for furniture staging services and rental home furnishings.

25. It was further a part of the scheme that PHIRI, using the alias "Malcolm Tucker," leased a car from Company D. PHIRI's application to Company D included false information about "Malcom Tucker" and fraudulent identity documents.

26. It was further a part of the scheme that PHIRI failed to pay Company A, Company B, Company C, and Company D for services provided to "Malcolm Tucker." The scheme resulted in a loss to Company A in the amount of $15,896.25; a loss to Company B in the amount of $35,167.50; a loss to Company C in the amount of $7,300; and a loss to Company D in the amount of $19,510.72.

27. On or about May 26, 2018, in the District of Columbia and elsewhere, the defendant SUZGO PHIRI having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, a transmission to Company A in the District of Columbia from another office that "Malcolm Tucker" had been approved to rent an apartment located at 28 K Street, SE, Washington, D.C.

**(Wire Fraud, Aiding and Abetting and Causing an**
**Act to be Done in violation of 18 U.S.C. §§ 1343 and 2)**

## COUNT TEN
**(Aggravated Identity Theft)**

28. Paragraphs 1 and 14 through 27 are realleged.

29. On or about May 26, 2018, in the District of Columbia and elsewhere, defendant SUZGO PHIRI did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, the Social Security Number of M.T., during and in relation to Count Nine of this Indictment.

**(Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A)**

## COUNT ELEVEN
### (Wire Fraud as "Eric Brooks")

30. Paragraph 1 is realleged.

31. Company E was a car subscription company located in Washington, D.C.

32. Company F managed a rental property located at 8250 Georgia Avenue, Silver Spring, Maryland.

33. Individual A is the owner of a rental property located at 705 River Mist Drive, Oxen Hill, Maryland.

### The Scheme to Defraud

34. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company E in the form of a car subscription without paying money that was due to Company E.

35. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company F and Individual A in the form of rental housing without paying money for it.

### Manner and Means

36. It was a part of the scheme to defraud that defendant PHIRI obtained a fake Maryland driver's license with the name "Eric Brooks," the defendant PHIRI's own photograph, and a fictitious date of birth.

37. It was further a part of the scheme that PHIRI, using the alias "Eric Brooks," applied to join Company E's car subscription service.

38. It was further a part of the scheme that PHIRI, using the alias "Eric Brooks," applied to Company F to lease an apartment located at 8250 Georgia Avenue, Silver Spring, Maryland.

39. It was further a part of the scheme that PHIRI, using the alias "Eric Brooks" applied to Individual A to lease the residence located at 705 River Mist Drive, Oxon Hill, Maryland.

40. It was further a part of the scheme that PHIRI failed to pay Company E, Company F, and Individual A for services provided to "Eric Brooks." The scheme resulted in a loss to Company E of more than $1,500; a loss to Company F or more than $30,000; and a loss to Individual A of more than $10,000.

41. On or about January 20, 2020, in the District of Columbia and elsewhere, the defendant SUZGO PHIRI having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, a transmission to Company E in the District of Columbia from another office that "Eric Brooks" had been approved to join Company E's car subscription service.

**(Wire Fraud, in violation of 18 U.S.C. §§ 1343)**

### COUNT TWELVE
**(Wire Fraud as "B.P.")**

42. Paragraphs 1 and 31 are realleged.

### The Scheme to Defraud

43. It was a purpose of the scheme to defraud for the defendant to obtain money and property from Company E in the form of car subscription without paying money that was due to Company E.

### Manner and Means

44. It was a part of the scheme to defraud that defendant PHIRI obtained a photograph of a Maryland driver's license issued to B.P. which included B.P.'s actual date of birth, address, and driver's license number.

45. It was further a part of the scheme that PHIRI applied to join Company E's car subscription service using personal identity information for B.P. without the permission of B.P.

46. It was further a part of the scheme that after being approved to join the car subscription service as "B.P.," PHIRI failed to pay Company E for the car subscription service causing losses to Company E of more than $10,000.

47. On or about June 4, 2021, in the District of Columbia and elsewhere, the defendant SUZGO PHIRI having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, a transmission to Company E in the District of Columbia from another office that "B.P." had been approved to join Company E's car subscription service.

**(Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2)**

### COUNT THIRTEEN
### (Aggravated Identity Theft)

48. Paragraphs 1, 31, and 44 through 48 are realleged.

49. On or about June 4, 2021, in the District of Columbia and elsewhere, defendant SUZGO PHIRI did knowingly transfer, possess, and use, without lawful authority, a means of

identification of another person, that is, the date of birth and driver's license number for B.P., during and in relation to Count Twelve of this Indictment.

**(Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A)**

## FORFEITURE ALLEGATION

50.     Upon conviction of the offenses alleged in Counts One, Nine, Eleven and Twelve of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

51.     Upon conviction of the offense alleged in Count Eight of this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in this offense or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

52.     The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

53.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1); 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p))**

_Matthew M. Graves/jph_
MATTHEW M. GRAVES
United States Attorney
for the District of Columbia

A TRUE BILL

_____
Foreperson
Date: